```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 06-4378(DSD/JJG)
```

Toll Bros., Inc., a
Pennsylvania corporation,

       Plaintiff,

v.                                                **ORDER**

Sienna Corporation, a Minnesota
corporation; Bruce G. Nimmer, an
Individual, Rodney D. Hardy, an
Individual, and John Hankinson,
an Individual,

       Defendants.

    Craig S. Krummen, Esq. and Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402 and Kenneth A. Prine, Esq. and Redgrave, Daley, Ragan & Wagner, 100 North Sixth Street, Suite 905B, Minneapolis, MN 55403, counsel for plaintiff.

    Mark W. Vyvyan, Esq., Grant D. Fairbairn, Esq., Sten-Erik Hoidal, Esq. and Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendants.

    This matter is before the court on plaintiff's motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, the court denies plaintiff's motion.

## BACKGROUND

    This is a diversity action under Minnesota law arising out of an alleged breach of contract between parties to a housing

development and production agreement. Plaintiff Toll Brothers, Inc. ("Toll") is a Pennsylvania corporation that engages in land acquisition and the design and building of luxury homes and communities. Defendant Sienna Corporation ("Sienna") is a Minnesota corporation that acquires and improves raw land before selling it to housing developers. Defendants Bruce G. Nimmer ("Nimmer"), Rodney D. Hardy ("Hardy") and John Hankinson ("Hankinson") are shareholders of Sienna.

In August 2005, Toll and Sienna entered into an agreement to develop land in Blaine, Minnesota. Toll deposited $750,000 in earnest money with Sienna. In return, Toll received personal guaranties from Nimmer, Hardy and Hankinson that they would refund the deposit if Sienna became obligated to return it. Pursuant to the agreement, Sienna promised to complete "Phase IA Improvements," which included final grading of forty lots, constructing and landscaping the entrance monument and community pool building and obtaining acknowledgment from the City of Blaine ("Blaine") that building permits would be available for those lots to be closed by Toll. (Noonan Aff. Ex. A. at § 4(b).) Under the agreement, Sienna was obligated to complete the Phase IA Improvements by October 1, 2006. (Id.) However, Sienna could extend the time for its performance if it was

> delayed by conditions beyond [Sienna's] control, including but not limited to Acts of God, casualty (not caused attributable to [Sienna]), terrorism, wars, insurrections,

>             labor disturbances (when substitute labor is
>             not available on commercially reasonable
>             terms), shortages or delays in deliveries of
>             materials (when substitute materials or
>             delivery methods are not available on
>             commercially reasonable terms)(any such event,
>             "Force Majeure"); provided, further, that, as
>             a condition to seeking any such delay as a
>             result of Force Majeure, [Sienna] shall give
>             [Toll] prompt written notice, with full
>             details following the occurrence of the cause
>             relied upon.

(Id.)

Before beginning the improvements, Sienna needed Blaine's approval of the preliminary plat and grading plan as well as approval by Blaine and the Minnesota Pollution Control Agency ("MPCA") of the off-site public improvement project that would provide the development with municipal sewer and water service. Blaine completed its feasibility report for the sewer project in June 2005, and the report estimated that the project would be approved by October 2005. However, Blaine did not approve the sewer project until March 27, 2006, despite efforts by Sienna to accelerate the process.[1] Further, Blaine did not approve Sienna's grading plan until June 30, 2006. Sienna informed Toll of these delays and believed it could nonetheless meet the October 1 deadline. (See Vogelbacher Decl. at ¶¶ 19-20.) However, on August 25, 2006, Sienna sent Toll a letter invoking the force majeure

---

[1] Sienna paid over $20,000 to complete Blaine's environmental assessment worksheets ("EAW") so that Blaine would not have to advertise and accept bids for the report. Sienna argues that this decreased the time for EAW completion by nearly five weeks.

clause and giving written notice that it would not complete the Phase IA Improvements on time. (See Noonan Aff. Ex. F.) Sienna explained that the "actions of the City of Blaine and the MPCA" caused a delay that was "beyond [its] control." (Id.) Sienna proposed a new deadline for the "latter part of November." (Id.)

On August 28, 2006, Toll sent Sienna a letter terminating their agreement and demanding return of the $750,000 deposit. (See id. Ex. G.) Sienna responded with a letter on September 25, 2006, accusing Toll of anticipatory repudiation and informing Toll that it would retain the deposit. (See id. Ex. H.) After further efforts to secure the return of the deposit failed, Toll filed this lawsuit on November 1, 2006, alleging breach of contract against defendants Sienna, Nimmer, Hardy and Hankinson. Defendants counterclaimed against Toll, seeking a declaratory judgment regarding the deposit and Toll's anticipatory repudiation of the agreement. Toll now moves the court for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## DISCUSSION

**I.  Legal Standard**

Pursuant to 28 U.S.C. § 1332(a)(1), the court has subject matter jurisdiction over this matter due to the diverse citizenship of the parties and to the amount in controversy exceeding $75,000.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

**II.  Force Majeure Clause**

Toll argues that Sienna breached the August 2005 agreement by failing to meet the October 1, 2006, deadline for Phase IA Improvements.  It asserts that delays by Blaine and the MPCA were foreseeable and that the force majeure clause, which did not specifically mention such delays, was not applicable.  Sienna argues that the force majeure clause is applicable because Sienna had no control over the conditions that caused the delays.

Pursuant to Minnesota law, contract language is given its plain and ordinary meaning.  See Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998).  Courts interpret a contract in such a way that "gives all of its provisions meaning."  See Current Tech. Concepts, Inc. v. Irie Enters., Inc., 530 N.W.2d 539, 543 (Minn. 1995).  Under section 4(b) of the agreement between Sienna and Toll, Sienna can extend the time for its performance if delayed by "conditions beyond [its] control," and these conditions are "not limited to" the occurrence of the itemized events.  (Noonan Aff. Ex. A at § 4(b).)  In order to give meaning to the phrase "including but not limited to," all conditions beyond Sienna's control, not just those specifically identified, must be acceptable reasons for an extension of time to

6

perform.  The governmental delay in receiving the permits was a condition beyond Sienna's control.  See <u>M.W. Johnson Constr., Inc. v. Progress Land Co.</u>, No. A04-2303, 2005 WL 1869679, at *6 (Minn. Ct. App. Aug 9, 2005) (delay in receiving city approval is condition beyond land developer's control).  Accordingly, summary judgment is not warranted.

### CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that plaintiff Toll Brothers, Inc.'s motion for summary judgment [Doc. No. 4] is denied.

Dated:  June 15, 20007

<u>s/David S. Doty</u><br>
David S. Doty, Judge<br>
United States District Court