UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-4378(DSD/JJG)

Toll Bros., Inc., a Pennsylvania corporation,

Plaintiff,

v.

**ORDER**

Sienna Corporation, a Minnesota corporation; Bruce G. Nimmer, an Individual, Rodney D. Hardy, an Individual, and John Hankinson, an Individual,

Defendants.

Justin H. Perl, Esq., Virginia A. Bell, Esq. and Maslon, Edelman, Borman & Brand, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402 and David W. Williams, Esq., Kevin B. Hirsch, Esq., Mark L. Kowalsky, Esq. Michael F. Jacobson, Esq. and Jaffe, Raitt, Heuer & Weiss, 27777 Franklin Road, Suite 2500, South field, MI 48034, counsel for plaintiff.

Mark W. Vyvyan, Esq., Grant D. Fairbairn, Esq., Sten-Erik Hoidal, Esq. and Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on plaintiff’s motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, the court denies plaintiff’s motion.

## BACKGROUND

This diversity action under Minnesota law arises out of an alleged breach of contract between parties to a housing development and production agreement. Plaintiff Toll Brothers, Inc. ("Toll") is a Pennsylvania corporation that engages in land acquisition and the design and building of luxury homes and communities. Defendant Sienna Corporation ("Sienna") is a Minnesota corporation that acquires and improves raw land before selling it to housing developers. Defendants Bruce G. Nimmer ("Nimmer"), Rodney D. Hardy ("Hardy") and John Hankinson ("Hankinson") are shareholders of Sienna.

In August 2005, Toll and Sienna entered into an agreement to develop land in Blaine, Minnesota. Toll deposited $750,000 in earnest money with Sienna. In return, Toll received personal guaranties from Nimmer, Hardy and Hankinson that they would refund the deposit if Sienna became obligated to return it. Pursuant to the agreement, Sienna promised to complete "Phase IA Improvements," which included final grading of forty lots, constructing and landscaping the entrance monument and community pool building and obtaining acknowledgment from the City of Blaine ("Blaine") that building permits would be available for those lots to be closed by Toll. (Martin Aff., Ex. 1 at § 4(b).) The agreement obligated

Sienna to complete the Phase IA Improvements by October 1, 2006. (Id.) However, Sienna could extend the time for its performance if it was

> delayed by conditions beyond [Sienna's] control, including but not limited to Acts of God, casualty (not attributable to [Sienna]), terrorism, wars, insurrections, labor disturbances (when substitute labor is not available on commercially reasonable terms), shortages or delays in deliveries of materials (when substitute materials or delivery methods are not available on commercially reasonable terms)(any such event, "Force Majeure"); provided, further, that, as a condition to seeking any such delay as a result of Force Majeure, [Sienna] shall give [Toll] prompt written notice, with full details following the occurrence of the cause relied upon.

(Id.)

Before beginning the improvements, Sienna needed Blaine's approval of the preliminary plat and grading plan as well as approval by Blaine and the Minnesota Pollution Control Agency ("MPCA") of the off-site public improvement project that would provide the development with municipal sewer and water service. Blaine completed its feasibility report for the sewer project in June 2005, and the report estimated that the project would be approved by October 2005. However, Blaine did not approve the sewer project until March 27, 2006, despite efforts by Sienna to accelerate the process.[1] Further, Blaine did not approve Sienna's

[1] Sienna paid over $20,000 to complete Blaine's environmental assessment worksheets ("EAW") so that Blaine would not have to (continued...)

grading plan until June 30, 2006. Sienna informed Toll of these delays but believed it could still meet the October 1 deadline. However, on August 25, 2006, Sienna sent Toll a letter invoking the force majeure clause and giving written notice that it would not complete the Phase IA Improvements on time. (See Martin Aff. Ex. 6.) Sienna explained that the "actions of the City of Blaine and the MPCA" caused a delay that was "beyond [its] control." (Id.) Sienna proposed a new deadline for the "latter part of November." (Id.)

On August 28, 2006, Toll sent Sienna a letter terminating their agreement and demanding return of the $750,000 deposit. Sienna responded with a letter on September 25, 2006, accusing Toll of anticipatory repudiation and informing Toll that it would retain the deposit. After further efforts to secure the return of the deposit failed, Toll filed this lawsuit on November 1, 2006, alleging breach of contract against all defendants. Defendants counterclaimed against Toll, seeking a declaratory judgment regarding the deposit and Toll's anticipatory repudiation of the agreement.

Toll moved the court for summary judgment on November 28, 2006, arguing that the force majeure clause did not apply to the delays Sienna experienced. After briefing and oral argument, the

---

[1](...continued)
advertise and accept bids for the report. Sienna argues that this decreased the time for EAW completion by nearly five weeks.

court determined that governmental delay was a condition beyond Sienna's control and denied Toll's motion on June 15, 2007. (Order of June 15, 2007, Doc. No. 24.) The parties conducted significant discovery, and on May 15, 2008, Toll again filed for summary judgment. Toll argues that Sienna - not Blaine - caused the delays, making the force majeure clause inapplicable, and that Sienna failed to provide prompt written notice as required to invoke the force majeure clause.

## DISCUSSION

### I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Force Majeure Clause**

Toll argues that Sienna breached their agreement by failing to meet the October 1, 2006, deadline and that the force majeure clause is inapplicable because Sienna caused or contributed to the delays. Sienna maintains that it had no control over the conditions that caused the delays.

In its June 15, 2007, order denying Toll's previous motion for summary judgment, the court determined that governmental delay in issuing the permits was a condition beyond Sienna's control. (Order of June 15, 2007, Doc. No. 24.) (citing M.W. Johnson Constr., Inc. v. Progress Land Co., No. A04-2303, 2005 WL 1869679, at *6 (Minn. Ct. App. Aug 9, 2005) (delay in receiving city

approval is condition beyond land developer's control)). Toll argues that the evidence revealed through discovery demonstrates that Sienna was complicit in causing the delays. Although the review process involved cooperation from both the local governmental entity and the developer, Toll has not unequivocally established that Sienna contributed to or caused the delays. Specifically, the parties disagree about the impartiality and accuracy of Blaine employee Tom Scott's testimony as well as his role in the development approval process. Therefore, after review of the materials produced, the court determines that factual issues remain as to the cause of the delays. Accordingly, summary judgment is not warranted as to Sienna's invocation of the force majeure clause.

**III. Notice**

Toll further argues that even if the delays fell within the ambit of the force majeure clause, Sienna improperly invoked the clause by failing to provide Toll with "prompt written notice." Section 4(b) of the sale agreement between Toll and Sienna states that "the Initial Closing Outside Date may be delayed by conditions beyond Seller's control ... provided, further, that, as a condition to seeking any such delay as a result of Force Majeure, Seller shall give Buyer prompt written notice, with full details following the occurrence of the cause relied upon." (Martin Aff., Ex. 1 at § 4(b).)

Toll argues that "prompt" is an unambiguous term and that Sienna failed to act promptly by waiting until August 25, 2006, to send the force majeure letter. The "cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Gobel, Inc. v. N. Suburban Agencies, 567 N.W.2d 511, 515 (Minn. 1997). Whether a contract is ambiguous is a legal question for a court to decide. Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979) (citations omitted). A contract "is ambiguous if it is susceptible to more than one interpretation based on its language alone." Lamb Plumbing & Heating Co. v. Kraus-Anderson of Minneapolis, Inc., 296 N.W.2d 859, 862 (Minn. 1980). Summary judgment is "inappropriate where terms of a contract are at issue and those terms are ambiguous or uncertain." Bank Midwest, Minn., Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn. 2004).

The written agreement does not further define "prompt written notice, with full details following the occurrence of the cause relied upon." Nor have Minnesota courts addressed similar language in a force majeure clause. However, even if there is no ambiguity, Toll has not demonstrated that Sienna's notice was untimely. Although evidence shows that Sienna knew about and informed Toll of potential delays prior to the August letter, the record also indicates that Sienna repeatedly assured Toll of its ability to

meet the October 1, 2006, deadline. Instead of buttressing Toll's claim of improper notice, such assurances suggest that Sienna still believed it could meet the deadline until August 2006 and that Sienna sent the force majeure letter promptly upon the realization that it could not. Accordingly, factual issues remain as to the timing of Sienna's force majeure letter, and the court will not grant Toll's motion for summary judgment.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that plaintiff Toll Brothers, Inc.'s motion for summary judgment [Doc. No. 47] is denied.

Dated: July 30, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court